OPINION OF THE COURT — by the
Hon. J. G. CLARKE.
The question in this case arising on motion in arrest of judgment, transferred on doubts from Adams superior court, is, whether in this state, murder can be committed on a slave. Because individuals may have *84 been deprived of many of their rights by society, it does not follow, that they have been deprived of all their rights.
In some respects, slaves may be considered as chattels, but in others, they are, regarded as men. The law vie\ys them as capable of committing crimes. This can only be upon the principle, that they are men and rational beings. The Roman law has been much relied on by the counsel of the defendant.. That law was confined to the Roman empire, giving the power of life and death over captives in war, as slaves, but it no more extended here, than the similar power given to parents over the lives of their children. Much stress has also been laid by the defendant’s counsel, on the case cited from Taylor’s reports, decided in North Carolina, yet in that case, two judges against one, were of opinion, that killing a slave was murder. Judge Hall, who delivered the dissenting opinion in the above case, based his conclusions, as we conceive, upon erroneous principles, by considering the laws of Rome applicable here. His inference, also, that a person cannot be condemned capitally, because, he may be liable in a civil action, is not sustained'by reason or-authority, but appears to us to be in direct opposition to both. At a very early period in Virginia, the power of life over slaves was given by statute, but Tucker observes^ that as soon as. these statutes were repealed, it was at once considered by their courts,, that the killing a slave might be murder. Commonwealth vs. Dolly Chapman, indictment for maliciously stabbing a slave under a statute. It has been determined in Virginia, that slaves axe persons. In the constitution of the United States, slaves are expressly designated as “persons.” In this state, the Legislature have considered slaves as reasonable and accountable beings and it would be a stigma upon the character of the state,, and a reproach to the administration of justice, if the life of a slave could be taken with impunity, or if he could be murdered in cold blood, without subjecting the offender to the highest penalty known to the criminal jurisprudence of the country. Has the slave no rights, because he is deprived of his freedom? He is still a human being, and possesses all those rights, of which he is not deprived by the positive provisions of the law, but in vain shall we look for any law passed by the enlightened and philanthropic legislature of this state, giving even to the master, much less to a stranger, power over the life of a slave. Such a statute would be *85 worthy the age of Draco or Caligula, and would be condemned by the unanimous voice of the people of this state, where, even cruelty to slaves, much less the taking away of life, meets with universal reprobation. By the provisions of our law, a slave may commit murder, and be punished with death; why then is it not murder to kill a slave? can a mere chattel commit murder, and be subjected to punishment5 Villains, in England, were more degraded than our slaves. It is truej that formerly, the murder of a villain was not punished with death, but neither was the murder of a freeman then so punished. The only difference between the freeman and the slave, was in the magnitude of the line. In England, killing a villain was as much murder, as killing a loul. Yet villains were then the most abject slaves, and could be bought and sold as chattels, but because slaves can be bought and sold, it does not follow that they can be deprived of life. The right of the master exists not by force of the law of nature or of nations, but by virtue only of tho positive law of the state, and although that gives to the master the right to command the services of the slave, requiring the master to feed and clothe the slave from infancy till death, yet it gives the master no right to take the life of the slave, and if the offence be not murder, it is not a crime, and subjects the offender to no punishment. The taking away the life of a reasonable creature, under the king’s peace, with malice aforethought, express or implied, is murder at common law. Is not the slave a reasonable creature, is ho not a human being, and tho meaning of this phrase reasonable creature is a human being, for the killing a lunitic, an idiot, or even a child unborn, is murder, as much as the killing a philosopher, and has not the slave as much reason as a lunitic, an idiot, or an unborn child? All are in tho kings peace, except alien enemies, flagrante bello. A distinction once existed in England, between the killing a Dane and a Saxon, but even in Coke’s time, the killing any rational being was murder. Jews were'then regarded in a light more odious than the most abjeetslave, yet to kill them was murder. So to kill one attainted, or an outlawed felon, or even an alien enemy, except in battle, might be murder. The term, ‘king’s peace’ means the place where the crime is committed, the actual venue, and not a particular class of human beings.
At one period of tho Roman history, a history written in the blood of *86 vanquished nations, slaves were regarded as captives, whose lives had lecis spared in battle, and the savage conqueror might take away the life of the captive, and therefore he might take away the life of the slave. But the civil law of Rome extirpated this barberous privilege, and rendered the killing a slave a capital offence.
When the northern barbarians overran Southern Europe, they had no laws but those of conquerers, and conquered, victors, and captives, yet even by this savage people, no distinction was recognized between the killing in cold blood, a slave or a freeman. And shall this court, in the nineteenth century, establish a principle, too sanguinary for the code even of the Goths and Vandals, and extend to the whole community, the right to murder slaves with impunity?
The motion to arrest the judgment must be overruled.
The defendant was sentenced to to be hung on the 27th July 1821,